**UNITED STATES DISTRICT COURT**                    **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| GREG MURPHY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| *versus* | § | CIVIL ACTION NO. 1:22-CV-135 |
| | § | |
| BEAUMONT INDEPENDENT SCHOOL | § | |
| DISTRICT and SHANNON ALLEN, | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM AND ORDER

Pending before the court is Plaintiff Greg Murphy's ("Murphy") Motion for Class Certification (#50), wherein Murphy asks the court to certify this action as a class action under Federal Rule of Civil Procedure 23. Defendants Beaumont Independent School District ("BISD") and Shannon Allen ("Allen"), BISD's Superintendent, (collectively, "Defendants") filed a response in opposition (#58), and Murphy filed a reply (#62). Having considered the motion, the submissions of the parties, the pleadings, and the applicable law, the court is of the opinion that Murphy's motion should be denied. This action is not appropriate for class certification because Murphy has failed to meet the threshold requirements of Federal Rule of Civil Procedure 23(a).

I.      Background

Murphy began working for BISD in January 2019. Murphy was employed as a carpenter, and his first year of employment was relatively uneventful. Near the end of March 2020, however, in response to the COVID-19 pandemic, BISD closed its doors and began instructing students virtually. At that same time, BISD's Board of Trustees delegated to Allen the authority

and discretion to make compensation decisions regarding those employees who continued to work during the closure.

Murphy contends that Allen's compensation decisions were in direct contravention of BISD's longstanding premium-pay policy. According to this policy, all "[n]onexempt employees who are required to work during an emergency closing for a disaster" are entitled to premium pay. Murphy contends that these "nonexempt employees" include himself, as a carpenter, as well as "custodians, plumbers, food service workers, electricians and support and maintenance personnel" who were required to work during the pandemic. During this time, many of these workers "took on essential roles of sanitizing the buildings, upkeeping [sic] the campus grounds, and providing meals and logistical support to allow for teachers and students to continue to teach and learn from their homes." Murphy contends that "in order to continue to receive their paychecks," he and these other workers were required "to work in some capacity." Nevertheless, "Allen did not pay the workers consistent with the policy" and, instead, created "her own policy[,] which was to do what she wished when she wished." In other words, her policy involved failing to provide premium pay to these nonexempt workers.

Months later, around December 2020, when Murphy realized that he and the other employees would not receive premium pay, he "spoke up" and "circulated a petition in order to present [BISD] with a list of names that supported fair pay consistent with [BISD] policy." Then, over a year later, in February 2022, Murphy made various statements to a group of his coworkers, ostensibly regarding his frustrations with BISD's failure to provide premium pay. The content of these statements, however, is disputed, as the parties have strikingly divergent views regarding what Murphy said at the time. Murphy maintains that he was discussing his memory of the

bombing of an Alabama church during the civil rights movement, while BISD contends that Murphy said he was going to blow up BISD's maintenance department.   In any event, he was accused of making "terroristic threats," was later arrested, and was also suspended indefinitely without pay.  Shortly thereafter, BISD terminated Murphy's employment.   Murphy then filed this action in which he asserts that Defendants violated his (and others') rights under the Fourteenth Amendment by failing to provide premium pay and violated his First Amendment rights by firing him in retaliation for exercising his right to the freedom of speech and association.   Murphy also appears to allege a Fourth Amendment malicious prosecution claim.   Murphy seeks a declaratory judgment that he and other BISD employees are entitled to premium pay for their work during the pandemic.   After conducting some limited discovery, Murphy now seeks class certification and desires to represent all other putative class members who were denied premium pay for their work during the pandemic in this action.   Defendants, however, oppose Murphy's motion for class certification and contend that the motion should be denied.

II.   <u>Analysis</u>

Generally, "litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)).  The class action is an exception to that general rule.  *Id*.  "In order to justify a departure from that rule, 'a class representative must be part of the class and "possess the same interest and suffer the same injury" as the class members.'"  *Id*. at 348-49 (quoting *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)).  In that vein, Federal Rule of Civil Procedure 23(a) operates as a gatekeeper to "ensure[] that the named plaintiff[] [is an]

appropriate representative[] of the class whose claims" he desires to litigate.   *Id.* at

349.  Specifically, Rule 23(a) requires that:

> (1)      the class is so numerous that joinder of all members is impracticable;
>
> (2)      there are questions of law or fact common to the class;
>
> (3)      the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4)      the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a); *Dukes*, 564 U.S. at 349; *Flecha v. Medicredit, Inc.*, 946 F.3d 762, 766

(5th Cir. 2020).  These four requirements are commonly referred to as "numerosity, commonality,

typicality, and adequate representation."  *Dukes*, 564 U.S. at 349.  This is by no means "a mere

pleading standard"; rather, a plaintiff must provide facts proving that these four conditions are

satisfied.  *Id.* at 350; *see Flecha*, 946 F.3d at 767.

After a plaintiff demonstrates his compliance with Rule 23(a), he must also "satisfy at least

one of the three requirements listed in Rule 23(b)."  *Dukes*, 564 U.S. at 346; *Funeral Consumers*

*All., Inc. v. Serv. Corp. Int'l.*, 695 F.3d 330, 345 (5th Cir. 2012).  When determining whether

a plaintiff has satisfied Rule 23's requirements, courts are to conduct a "rigorous analysis" that

may "entail some overlap with the merits of the plaintiff's underlying claim[s]."  *Dukes*, 564 U.S.

at 351; *Simms v. Jones*, 296 F.R.D. 485, 496 (N.D. Tex. 2013), *aff'd sub nom. Ibe v. Jones*, 836

F.3d 516 (5th Cir. 2016).  In this case, Murphy is unable to satisfy Rule 23(a)'s requirements;

thus, the court need not reach Rule 23(b).

Murphy's Third Amended Complaint (#55) states that the proposed class consists of

"nonexempt, auxiliary workers employed by BISD during the school closures caused by the

COVID-19 pandemic . . . (i.e., custodians, plumbers, food service workers, electricians[,] and support and maintenance personnel) . . . [who] were entitled to be paid Premium Pay, pursuant to BISD policy." In his motion, Murphy contends that certification is proper because he can satisfy Rule 23(a)'s four requirements as well as Rule 23(b)(2). Defendants, on the other hand, assert that Murphy "offers nothing more than boilerplate allegations to support the class he seeks to certify" and point out that this "case involv[es] individualized allegations of harm to Murphy" that overshadow Murphy's class allegations. Importantly, to warrant class certification, Murphy must first prove that all four of Rule 23(a)'s prerequisites are satisfied.

Murphy must first show that the numerosity requirement is satisfied. That is, for certification to be proper, the class must be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). "[A] plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members." *Ibe*, 836 F.3d at 528 (quoting *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1038 (5th Cir. Unit A July 1981)). That said, there is no "magic number at which the numerosity requirement is satisfied." *Simms*, 296 F.R.D. at 497 (citing *In re TWL Corp.*, 712 F.3d 886, 894 (5th Cir. 2013)). As Rule 23(a)(1) clarifies, the touchstone with respect to numerosity is whether "joinder is impracticable." *See Ibe*, 836 F.3d at 528 (citing *In re TWL Corp.*, 712 F.3d at 894); *Simms*, 296 F.R.D. at 497. "To make this determination, courts turn to several factors, including 'size of the class, ease of identifying members and determining their addresses, facility of making service on them if joined[,] and their geographic dispersion.'" *Simms*, 296 F.R.D. at 497 (quoting *Garcia v. Gloor*, 618 F.2d 264, 267 (5th Cir. 1980)).

On this point, Murphy contends that "[t]he class proposed here more than meet[s] the numerosity standards," as the class, in his estimation, "contains approximately 100 or more people, in addition to an unknown number [of] members." Defendants aver that "Murphy has failed to produce any evidence supporting this proposed class number." In fact, the only support Murphy provides for this assertion is a portion of his own deposition, which he attached to his reply in support of his motion. A close look at his deposition, however, tells a different story. In his reply, Murphy asserts that the petition that he circulated throughout the school district contained nearly two hundred names; a fact that he confirmed in his deposition. Importantly, though, Murphy concedes that the contents of that petition do not define the boundaries of the proposed class at issue here. BISD, in response to complaints about its refusal to provide premium pay, opted to pay any employee willing to settle for a portion of the premium pay it was claimed to owe. Many BISD employees took the money and signed a release. Accordingly, Murphy agrees that, properly framed, "[t]he class consists of those that did not sign the release and get their check for only a part of the premium pay they were owed." The question then becomes, of the "two hundred" petition signers, how many refused the check and reserved their right to sue BISD? In his reply, Murphy clarifies that, while he "does not know" how many employees refused to settle, "he knows it was a number of them." This assertion, though, does not appear to be accurate.

Defendants point to a later part of Murphy's deposition, where Murphy was asked about the size of the proposed class. His response significantly undercuts his claim that joinder is impracticable. When asked if he knew the names of other individuals who did not take the check and settle, he stated that he thought that there was a list of such people. Then, when asked if he

6

knew these people by name, he provided three names and then stated: "There were probably 10 or 15. I can't name them." Thus, Murphy's response demonstrates that the proposed class at issue here is relatively small and would not be so numerous as to render joinder of all these persons impracticable. Accordingly, this analysis ends where it started, as Murphy has failed to prove that the numerosity requirement is satisfied.

In any event, Murphy is unable to satisfy the other requirements of Rule 23(a). Setting aside commonality for the time being, Murphy's pleadings also clarify that he cannot satisfy Rule 23(a)'s typicality and adequacy of representation requirements. The class representative's claims or defenses must be "typical of the claims or defenses of the class," and the representative must also "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(3)-(4). The typicality and adequacy of representation requirements "are 'closely related' in that 'demanding typicality on the part of the representative helps ensure his adequacy as a representative.'" *Ward v. Hellerstedt*, 753 F. App'x 236, 246 (5th Cir. 2018) (quoting *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 485 n.27 (5th Cir. 1982)). As for the "typicality inquiry," it "rests 'less on the relative strengths of the named and unnamed plaintiffs' cases than on the similarity of legal and remedial theories behind their claims.'" *Ibe*, 836 F.3d at 528-29 (quoting *Jenkins v. Raymark Indus. Inc.*, 782 F.2d 468, 472 (5th Cir. 1986)). "[T]he critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class." *Ward*, 753 F. App'x at 247 (quoting *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002)). As for the adequacy prong, it encompasses "three inquiries: '(1) the zeal and competence of the representatives' counsel; (2) the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees; and (3) the risk of conflicts

7

of interest between the named plaintiffs and the class they seek to represent." *Ward*, 753 F. App'x at 247 (quoting *Slade v. Progressive Sec. Ins. Co.*, 856 F.3d 408, 412 (5th Cir. 2017)).

Murphy asserts that he has satisfied both of these prongs because he "and the class members [he] represent[s] are all injured in the same way" and "because [his] interest[] in the vindication of the legal claims they raise [is] wholly aligned with the interests of [his] fellow class . . . members." Defendants, however, argue that "Murphy is an inadequate class representative" because "his First Amendment retaliation and Fourth Amendment malicious prosecution claims are unique and personal to him, which is necessarily to the detriment of the putative class." Indeed, along with his claims regarding Defendants' withholding of premium pay, Murphy contends that his First Amendment rights were violated when Defendants suspended him due to, as he contends, his decision to "speak up" about the denial of premium pay and circulate a petition among the other BISD employees. Murphy further asserts that he was falsely accused of making terroristic threats and maliciously prosecuted. Defendants correctly note that "no other putative class member has been identified as also being arrested" or "terminated." Defendants contend that, as a result, "these claims depart from [Murphy's] alleged common contention of the class."

In light of these significant differences, Murphy has failed to satisfy the typicality and representation prongs of Rule 23(a). Murphy's motion only vaguely contends that these two requirements are satisfied, and he provides no support for his assertions. Further, while Murphy's claims are typical of those of the proposed class in a narrow sense, his complaint nonetheless reveals that he would not be an adequate class representative. Murphy's "unique circumstances" make him an inadequate class representative. *See Brown v. Hous. Cmty. Coll.*, No. H-20-2186,

2022 WL 1153919, at *3 (S.D. Tex. Apr. 19, 2022) (finding that because plaintiff asserted a whistleblower claim and was put on administrative leave, conditions unique to the plaintiff, she was an inadequate class representative); *Terry v. Aminoil USA, Inc.*, No. H-81-3258, 1987 WL 6260, at *1-2 (S.D. Tex. Jan. 21, 1987) (plaintiff's "uniquely personal complaint" prevented her from functioning as a proper representative under Rule 23(a)(3) and (4)); *see also Pinkard v. Pullman-Standard*, 678 F.2d 1211, 1215 (5th Cir. Unit B 1982).  Because Murphy asserts claims for retaliation and malicious prosecution, which are not shared by any other member of the putative class, it appears that "a significant portion of the trial on the merits would center on [Murphy's] uniquely personal issues, to the detriment of [his] . . . alleged class issues." *Terry*, 1987 WL 6260, at *1; *see Brown*, 2022 WL 1153919, at *3.  That is, Murphy's individualized claims, which are far more inflammatory, overshadow his class claim such that he would be unable to represent (and protect) the rights of the putative class adequately.

III.   Conclusion

Murphy's class allegations are unable to withstand a "rigorous analysis" as required, and, as a result, Murphy has failed to prove each of Rule 23(a)'s four requirements.  Hence, because Murphy is unable to comply with Rule 23(a), the court need not determine whether he can satisfy the demands of Rule 23(b)(2).

Accordingly, Murphy's Motion for Class Certification (#50) is DENIED, and all of Murphy's class allegations in his Third Amended Complaint (#55) are STRICKEN.

SIGNED at Beaumont, Texas, this 12th day of July, 2024.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE

9