**UNITED STATES DISTRICT COURT**       **EASTERN DISTRICT OF TEXAS**

GREG MURPHY,                                §
                                            §
                    Plaintiff,              §
                                            §
*versus*                                    §       CIVIL ACTION NO. 1:22-CV-135
                                            §
BEAUMONT INDEPENDENT SCHOOL                 §
DISTRICT and SHANNON ALLEN,                 §
                                            §
                    Defendants.             §

**MEMORANDUM AND ORDER**

Pending before the court is Defendants Beaumont Independent School District ("BISD")

and Shannon Allen's ("Allen") (collectively, "Defendants") Motion for Summary Judgment (#61),

wherein Defendants ask this court to grant summary judgment as to all the claims contained in

Plaintiff Greg Murphy's ("Murphy") Third Amended Complaint (#55).  Allen independently asks

that the court grant summary judgment based on the affirmative defense of qualified immunity.

Murphy filed a response in opposition (#67).  Defendants filed a reply (#70), and Murphy filed

a sur-reply (#74).  Having considered the pending motion, the parties' submissions, the pleadings,

the record, and the applicable law, the court is of the opinion that Defendants' motion for

summary judgment should be granted.

I.    <u>Background</u>

This lawsuit arises from a three-year employment relationship between BISD and Murphy.

BISD hired Murphy on January 7, 2019, as a carpenter in BISD's Maintenance Department.  The

employment relationship developed without incident until the coronavirus ("COVID-19")

pandemic entered the United States.

On March 24, 2020, Defendants responded to the escalating health risk by closing BISD's doors to the public.  BISD, however, asked its employees to continue working to provide remote educational services and meals to its students.  Murphy continued to report to work as requested.  He maintains, however, that he expected to be paid an increased hourly rate pursuant to the Premium Pay During Disasters Policy ("Premium Pay Policy") section of BISD's Board Policy DEA (Local).  The Premium Pay Policy increases an employee's hourly rate one and one-half times for hours worked during an emergency closure ("Premium Pay").  The same day BISD closed its doors to the public, BISD's Board of Trustees ("the Board") passed a resolution that delegated a substantial amount of decision-making authority to Allen, the Superintendent of BISD.  Among the delegated authorities, the Board authorized Allen to make decisions regarding employee compensation for work performed during an emergency closure or period of modified operations.  Allen, acting with the Board's authorization, decided that only those employees whose position required prolonged exposure to the public would receive Premium Pay.  Murphy, whose position did not involve prolonged exposure to the public, did not qualify.

On June 30, 2020, Larry Josh ("Josh") filed an internal grievance on behalf of the members of the Beaumont Teachers Association ("the BTA") seeking retroactive "enhanced COVID-19 pay."  After Josh filed the BTA's grievance, other employees, including Murphy, began filing internal grievances seeking the same relief.  Murphy filed his own internal grievance on July 8, 2020, alleging that he was entitled to retroactive Premium Pay for the hours he worked between March 23, 2020, and May 28, 2020.  After various internal proceedings, Allen executed a Resolution and Release Agreement on December 2, 2020, which offered to settle the claims of

the BTA and any other employees who filed a grievance in exchange for $819.06 each.  Murphy rejected the settlement and refused to deposit the check he received from BISD.

After rejecting Defendants' settlement offer, Murphy began circulating a petition and collecting signatures of similarly situated coworkers in an effort to initiate a legal action against Defendants.  Once Murphy gathered what he believed to be sufficient support, he began consulting with a local lawyer during the late Spring and early Summer of 2021.  Murphy maintains that BISD learned of his consultation with legal counsel and started a campaign of retaliation against him.  On August 13, 2021, BISD's Assistant Director of Maintenance issued Murphy a "Misconduct Notice" based on Murphy's purportedly "poor work performance."  On February 9, 2022, BISD police arrested Murphy based on reports that Murphy had threatened to bomb BISD's Maintenance Department.  BISD instituted an independent investigation into Murphy's conduct and ultimately terminated Murphy's employment on March 12, 2022.  BISD claims to have terminated Murphy's employment for two reasons.  First, after reviewing the evidence, BISD concluded that Murphy made a terroristic threat against BISD.  Second, Murphy refused to cooperate during BISD's investigation, in contravention to BISD policy.  Murphy, however, asserts that both his arrest and termination were the result of BISD's retaliatory agenda.

On March 31, 2022, Murphy filed his Original Complaint (#1) in the Eastern District of Texas, Beaumont Division, alleging that Defendants violated his substantive and procedural due process rights.  Murphy amended his Complaint three times (#s 9, 32, 55), adding additional claims of unlawful retaliation under the First Amendment and malicious prosecution under the Fourth Amendment.  Defendants filed a Joint Answer (#57), denying the allegations set forth in Murphy's Complaint.  Additionally, Allen pleaded the affirmative defense of qualified immunity.

On April 1, 2024, Defendants moved for summary judgment on all the claims asserted in Murphy's Third Amended Complaint (#61).   Allen also moved independently for summary judgment on the grounds of qualified immunity.

II.   Analysis

    A.   Summary Judgment Standard

    Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Union Pac. R.R. Co.v. City of Palestine*, 41 F.4th 696, 703 (5th Cir. 2022); *United Steel, Paper & Forestry, Rubber Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. Anderson*, 9 F.4th 328, 331 (5th Cir. 2021); *Smith v. Harris County*, 956 F.3d 311, 316 (5th Cir. 2020); *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 378 (5th Cir. 2019); *Hefren v. McDermott, Inc.*, 820 F.3d 767, 771 (5th Cir. 2016).   The parties seeking summary judgment bear the initial burden of informing the court of the basis for their motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which they believe demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *MDK Sociedad De Responsabilidad Limitada v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022); *Goldring v. United States*, 15 F.4th 639, 644-45 (5th Cir. 2021); *Playa Vista Conroe v. Ins. Co. of the W.*, 989 F.3d 411, 416-17 (5th Cir. 2021); *Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019).   Alternatively, to warrant judgment in their favor, the movants "must establish beyond peradventure *all* of the essential elements of [their] claim or defense." *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 302 (5th Cir. 2020) (quoting *Dewan v. M-I,*

*L.L.C.*, 858 F.3d 331, 334 (5th Cir. 2017)); *accord Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 378 (5th Cir. 2011).  At the summary judgment stage, the defendant "bears the burden of proving each element of each affirmative defense by a preponderance of the evidence." *Petro Harvester Operating Co., L.L.C. v. Keith*, 954 F.3d 686, 697 (5th Cir. 2020) (citing *Celotex Corp.*, 477 U.S. at 322-23).

"A fact issue is 'material' if its resolution could affect the outcome of the action." *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015) (quoting *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007)); *see MDK Sociedad De Responsabilidad Limitada*, 25 F.4th at 368; *Lexon Ins. Co., Inc. v. Fed. Deposit Ins. Corp.*, 7 F.4th 315, 321 (5th Cir. 2021); *Dyer v. Houston*, 964 F.3d 374, 379 (5th Cir. 2020). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Hefren*, 820 F.3d at 771; *accord MDK Sociedad De Responsabilidad Limitada*, 25 F.4th at 368; *Sanchez Oil & Gas Corp. v. Crescent Drilling & Prod., Inc.*, 7 F.4th 301, 309 (5th Cir. 2021); *Dyer*, 964 F.3d at 379; *Tiblier v. Dlabal*, 743 F.3d 1004, 1007 (5th Cir. 2014).  The court "should review the record as a whole." *Black v. Pan Am. Lab'ys, LLC*, 646 F.3d 254, 273 (5th Cir. 2011) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)); *see Hacienda Recs., L.P. v. Ramos*, 718 F. App'x 223, 234 (5th Cir. 2018); *City of Alexandria v. Brown*, 740 F.3d 339, 350 (5th Cir. 2014).  All the evidence must be construed in the light most favorable to the nonmoving party, and the court will not weigh the evidence or evaluate its credibility. *Reeves*, 530 U.S. at 150; *Seigler v. Wal-Mart Stores Tex., L.L.C.*, 30 F.4th 472, 476 (5th Cir. 2022); *Batyukova v. Doege*, 994 F.3d 717, 724 (5th Cir. 2021); *Lyons*, 964 F.3d at 302.

B.      Claims Pursuant to 42 U.S.C. § 1983

The Civil Rights Act of 1871, 42 U.S.C. § 1983, creates a private cause of action for redressing the violation of federal law by those acting under color of state law.  *Manuel v. City of Joliet*, 580 U.S. 357, 362 (2017); *Dist. Atty's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 65 (2009); *Inyo County v. Paiute-Shoshone Indians of the Bishop Cmty.*, 538 U.S. 701, 708 (2003); *Legacy Cmty. Health Servs., Inc. v. Smith*, 881 F.3d 358, 371 (5th Cir. 2018); *Orr v. Copeland*, 844 F.3d 484, 491-92 (5th Cir. 2016).  Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983; *accord Connick v. Thompson*, 563 U.S. 51, 60 (2011).  "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *accord Graham v. Connor*, 490 U.S. 386, 393-94 (1989); *Bradley v. Sheriff's Dep't St. Landry Par.*, 958 F.3d 387, 395 n.39 (5th Cir. 2020); *Sepulvado v. Jindal*, 729 F.3d 413, 420 n.17 (5th Cir. 2013).

A claim under 42 U.S.C. § 1983 has two foundational elements:  "a violation of the Constitution or of federal law, and . . . the violation was committed by someone acting under color of state law." *Webb v. Town of St. Joseph*, 925 F.3d 209, 214 (5th Cir. 2019) (quoting *Rich v. Palko*, 920 F.3d 288, 293-94 (5th Cir. 2019)); *accord Gomez v. Galman*, 18 F.4th 769, 775 (5th Cir. 2021); *Doe v. Columbia-Brazoria Indep. Sch. Dist.*, 855 F.3d 681, 687-88 (5th Cir. 2017).  Thus, for Murphy to recover, he must show that Defendants deprived him of a right

guaranteed by the Constitution or the laws of the United States.  *Manuel*, 580 U.S. at 370 (citing *Albright*, 510 U.S. at 271); *Baker*, 443 U.S. at 139; *Bradley*, 958 F.3d at 395; *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854-55 (5th Cir. 2012).

Murphy contends that Defendants violated four constitutional rights for which redress is warranted under 42 U.S.C. § 1983.  First, Murphy claims that Defendants violated his substantive due process rights by arbitrarily and capriciously denying Murphy's request for Premium Pay. Second, Murphy maintains that Defendants violated his procedural due process rights by depriving him of a protected property interest without proper procedural safeguards in place.   Third, Murphy asserts that Defendants violated his First Amendment rights by retaliating against him for speaking out against BISD and organizing a legal action against BISD.  Finally, Murphy claims that Defendants violated his Fourth Amendment right to be free from malicious prosecution by arresting him pursuant to a fabricated bomb threat.

C.    BISD's Liability

For § 1983 liability to attach to a local governmental entity, a plaintiff must establish three elements:  "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom."  *Culbertson v. Lykos*, 790 F.3d 608, 628 (5th Cir. 2015) (quoting *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (2018)); *see Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d 616, 623 (5th Cir. 2018).  Regardless of whether the claim involves Due Process, First Amendment, or Fourth Amendment violations, the key to recovery against a governmental entity under § 1983 is demonstrating the deprivation of a constitutional right pursuant to an official policy or custom.  Hence, to prevail against BISD under § 1983, Murphy must demonstrate that BISD deprived him of his constitutional rights pursuant to an

official BISD policy or custom.  *See Connick,* 563 U.S. at 60-61; *Groden v. City of Dallas*, 826 F.3d 280, 283 (2016); *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 166 (5th Cir. 2010).

       1.   <u>BISD's Policymaker</u>

     Proof of a responsible policymaker is a necessary element for the imposition of governmental liability under § 1983.  *Connick*, 563 U.S. at 60-61; *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (2001) (citing *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)); *see Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004).  For purposes of his claims against BISD, Murphy has identified Allen as the responsible policymaker.  State law determines whether a particular individual is a final policymaker of a governmental entity with respect to a certain sphere of activity.  *McMillian v. Monroe County*, 520 U.S. 781, 786 (1997); *Culbertson*, 790 F.3d at 624.  Authority to make municipal policy may be granted directly by the legislature or by delegation from an official who possesses such authority. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986).

     Under Texas law, final policymaking authority for an independent school district rests with its board of trustees.  *See Longoria ex rel. M.L. v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 271 (5th Cir. 2019) (citing Tex. Educ. Code § 11.151(b)); *Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003).  Generally, a school district is not liable for the actions of a nonpolicymaking employee, such as the superintendent.  *See Doe v. Dall. Indep. Sch. Dist.*, 153 F.3d 211, 216 (5th Cir. 1998); *Meadowbriar Home for Child., Inc. v. Gunn*, 81 F.3d 521, 532-33 (5th Cir. 1996); *Jett*, 7 F.3d at 1245; *Foster v. McLeod Indep. Sch. Dist.*, No. 5:08-CV-71, 2009 WL 175154, at *2 (E.D. Tex. Jan. 23, 2009) ("Although principals and superintendents might have 'decision-making authority' under the Texas Education Code, they do

not have 'the policymaking authority required to sustain liability under § 1983.'" (citing *Rivera*,

349 F.3d at 247-48)); *see also Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 604 (5th Cir.

2001) (holding that a school district is not liable when the school board, without knowledge of the

alleged retaliatory motive, acted on the recommendation of the superintendent and the principal

to terminate an employee).  Consequently, Allen, as BISD's superintendent, generally does not

possess the requisite policymaking authority required for the imposition of liability against BISD

under § 1983.

In the present dispute, however, Allen represents a unique exception to the general rule.

A final policymaker, as identified by state law, may delegate its final policymaking authority to

an employee of the local governmental entity.  *Jackson v. Valdez*, 852 F. App'x 129, 135 (5th Cir.

2021); *Webb*, 925 F.3d at 215; *Zarnow*, 614 F.3d at 168 (recognizing that final policymaking

authority may be delegated).  The delegation may be express or implied.  *Webb*, 925 F.3d at 215

("A municipal employee may also possess final policymaking authority where the final policy

maker has delegated that authority, either expressly or impliedly.").

On March 24, 2020, BISD's Board passed a resolution, which provides:

[T]he Board of Trustees of the Beaumont ISD makes the following delegations to
the superintendent in order to efficiently and effectively prepare the school district
in response to the declarations of emergency announced by Jefferson County and
the State of Texas and independently in preparation for the potential declarations
of emergencies by other local, state, and/or national and international officials:

(1)     The authority to act in the place of the Board of Trustees under
Board  Policy DEA (Local) and thus make all decisions regarding
payment of employees during an emergency closure or period of
modified operations, to implement the provisions of Board Policy
DEA (Local), and to make determinations regarding the purpose of
any such expenditures;

(2)     The authority to make decisions regarding the compensation, if any, of exempt and non-exempt employees who may be required to report to work or work remotely during an emergency closure or period of modified operations and to implement those decisions . . . .

Accordingly, BISD's Board expressly delegated a portion of its authority to Allen. Not every delegation of authority by a final policymaker, however, is one of policymaking authority. *Sweetin v. City of Texas City*, 48 F.4th 387, 393 (5th Cir. 2022). Rather, the court must evaluate whether the delegation was that of final policymaking authority, or mere decisionmaking authority. *See id.* A delegation of final policymaking authority arises when the delegatee is responsible for setting the final policy in any given area of the governmental entity's operation. *Doe v. Burleson County*, 86 F.4th 172, 176 (5th Cir. 2023). Stated another way, the delegatee receives final policymaking authority when the policy he sets in place does not require subsequent approval, nor is it subject to subsequent review, by some higher authority. *Id.*; *Pembaur*, 475 U.S. at 483 (recognizing that a delegation of policymaking authority arises when an official is responsible for "establishing final policy with respect to the subject matter in question").

Here, BISD delegated to Allen final policymaking authority over the matters contained in the resolution. By its very terms, the resolution empowers Allen to act "in the place of" the Board. Additionally, the resolution does not provide any mechanism by which Allen's decision may be subject to approval or review. Moreover, the resolution permits Allen to make final decisions regarding employee compensation and decisions interpreting Board Policy DEA (Local) in light of the unique circumstances surrounding COVID-19. As a result, BISD's Board delegated to Allen final policymaking authority over the subject matter outlined in the resolution, thereby making Allen a final policymaker for purposes of § 1983.

2.      BISD's Official Policies or Customs

The Supreme Court has expressly held that a plaintiff may, under § 1983, directly sue a local governmental entity where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690; *see Collins v. City of Harker Heights*, 503 U.S. 115, 120-21 (1992); *Stem v. Gomez*, 813 F.3d 205, 210 (5th Cir. 2016); *Zarnow*, 614 F.3d at 166.  A governmental entity may also be sued "for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell*, 436 U.S. at 690-91; *accord Stem*, 813 F.3d at 210; *Zarnow*, 614 F.3d at 166.  The United States Court of Appeals for the Fifth Circuit has defined an official policy or custom as:

1.      A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2.      A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.  Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992) (quoting *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984); *accord Armstrong v. Ashley*, 60 F.4th 262, 276 (5th Cir. 2023) (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984)); *ODonnell v. Harris County*, 892 F.3d 147, 155 (5th Cir. 2018), *overruled on other grounds by Daves v. Dallas County*, 22 F.4th 522 (5th Cir. 2022); *Cox v. City of Dallas*, 430 F.3d 734, 748-49 (5th Cir. 2005).

A "policy" can be demonstrated in three different manners.  The first type of "policy" is characterized by formal rules and understandings which constitute fixed plans of action to be followed under similar circumstances consistently and over time.  *See Pembaur*, 475 U.S. at 480-81; *accord ODonnell*, 892 F.3d at 155 (citing *Jett*, 491 U.S. at 737; *Baker v. City of McKinney*, No. 4:21-CV-00176, 2022 WL 3704301, at *8 (E.D. Tex. Aug. 26, 2022).  The second type of "policy" arises from custom, *i.e.*, "conduct that has become a traditional way of carrying out policy and has acquired the force of law."  *Bennett*, 728 F.2d at 768; *accord ODonnell*, 892 F.3d at 155; *Zarnow*, 614 F.3d at 168-69; *Baker*, 2022 WL 3704301, at *8.  A third type of "policy" stems from "a final decisionmaker's adoption of a course of action 'tailored to a particular situation and not intended to control decisions in later situations.'"  *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 406 (1997) (quoting *Pembaur*, 475 U.S. at 481); *accord Advanced Tech. Bldg. Sols., L.L.C. v. City of Jackson,* 817 F.3d 163, 165 (5th Cir. 2016); *In re Foust*, 310 F.3d 849, 862 (5th Cir. 2002); *Baker*, 2022 WL 3704301, at *8.

BISD, in its statement of issues, contends that Murphy cannot identify an official policy, practice, or custom for each of his constitutional claims as required by § 1983.  Section 1983 demands that "each and any policy which allegedly caused constitutional violations must be specifically identified by a plaintiff . . . ."  *Piotrowski*, 237 F.3d at 579; *accord M. D. ex rel. Stukenberg v. Abbott*, 907 F.3d 237, 253-54 (5th Cir. 2018); *Martinez v. Maverick County*, 507 F. App'x 446, 448 (5th Cir. 2013) (explaining that "wide-ranging conclusory allegations" fail to identify an injury-causing policy).  Where, as here, a plaintiff asserts constitutional violations that are markedly separated by time and involve actions taken by different individuals, the plaintiff must identify and connect each violation to a policy or custom.  *See Adams v. Springtown Indep.*

12

*Sch. Dist.*,   No. 4:22-cv-00695-BP, 2023 WL 2518858, at *5 (N.D. Tex. Mar. 14, 2023) (emphasizing the requirement that a plaintiff identify each policy that caused constitutional violations); *Terry v. City of New Orleans*, 523 F. Supp. 2d 486, 498 (E.D. La. 2007) ("A plaintiff must identify each and every policy which allegedly caused the constitutional violation."). Murphy advances four constitutional claims against BISD.  Consequently, to survive summary judgment, Murphy must identify and raise a genuine dispute of material fact regarding the existence of a BISD policy or custom that served as the moving force for each violation asserted.

a.   Substantive and Procedural Due Process

Murphy maintains that BISD violated both his substantive and procedural due process rights by depriving him of his protected property interest in receiving Premium Pay.  Specifically, Murphy identifies three policies as the moving force behind the alleged due process violations. First, Murphy identifies the language contained in Board Policy DEA (Local), which provides:

> During an emergency closure, all employees shall continue to be paid for their regular duty schedule unless otherwise provided by Board action.  Following an emergency closure, the Board shall adopt a resolution or take other Board action establishing the purpose and parameters for such payments . . . .
>
> Nonexempt employees who are required to work during an emergency closing for a disaster, as declared by a federal, state, or local official or the Board, shall be paid at the rate of one and one-half times their regular rate of pay for all hours worked up to 40 hours per week.

Second, Murphy highlights the resolution passed on March 24, 2020, where the Board delegated to Allen the authority to make certain decisions regarding compensation during an emergency closure or period of modified operations.  Lastly, acting in tandem with the Board's resolution, Murphy also identifies Allen's decision to provide Premium Pay only to a limited number of employees.

13

Here, the policies identified by Murphy fall within the first classification.  BISD's Board, which has final policymaking authority under state law, promulgated Board Policy DEA (Local). The policy sets forth formal rules and an understanding regarding the compensation of employees during an emergency closure.  *See Pembaur*, 475 U.S. at 480-81; *accord ODonnell*, 892 F.3d at 155; *Baker*, 2022 WL 3704301, at *8.  Similarly, Allen's decision to limit Premium Pay also represents a fixed plan of action to be followed under similar circumstances consistently and over time, as Allen's decision established a compensation system that would govern throughout the indefinite duration of BISD's modified operations.  *See Pembaur*, 475 U.S. at 480-81; *accord ODonnell*, 892 F.3d at 155; *Baker*, 2022 WL 3704301, at *8.  Accordingly, Murphy has sufficiently identified a policy with respect to his substantive and procedural due process claims.

      b.     <u>First Amendment Retaliation</u>

Murphy does not identify any policy or custom in his Third Amended Complaint or in his response to Defendants' motion for summary judgment as the moving force behind BISD's alleged First Amendment retaliation.  "Generally, a plaintiff must identify a policy or custom that gave rise to the plaintiff's injury before he may prevail." *Mack v. City of Abilene*, 461 F.3d 547, 556 (5th Cir. 2006) (citing *Canton v. Harris*, 489 U.S. 378, 389 (1989)).  Additionally, Murphy has not advanced or identified any summary judgment evidence that would support the finding of the existence of an official policy or custom.  As a matter of fact, Murphy completely omits any reference to the requirements for governmental liability as it pertains to his First Amendment claim.  Standing alone, Murphy's failure to identify, with reasonable particularity, summary judgment evidence of an official policy or custom is sufficient grounds for granting summary judgment on his First Amendment claim. *Wease v. Ocwen Loan Serv., L.L.C.*, 915 F.3d 987,

996-97 (5th Cir. 2019) ("It is not [the court's] function to scour the record in search of evidence to defeat a motion for summary judgment; we rely on the nonmoving party to identify with reasonable particularity the evidence upon which he relies.").

Nevertheless, Murphy intimates in his deposition that there existed a pattern of unconstitutional conduct at BISD such that Allen, as a final policymaker, can fairly be said to have known of and accepted the alleged conduct.  Before evaluating whether Murphy can establish an official policy or custom via a pattern of unconstitutional conduct, however, it is important to note that Allen does not qualify as a final policymaker with respect to Murphy's First Amendment claims.  As mentioned above, the superintendent does not generally have final policymaking authority for a school district.  *See Longoria ex rel. M.L.*, 942 F.3d at 271 (citing TEX. EDUC. CODE § 11.151(b)); *Meadowbriar Home for Child., Inc.*, 81 F.3d at 532-33.  Consequently, Murphy must demonstrate that Allen's policymaking authority extended to Murphy's First Amendment claim.  *Doe*, 86 F.4th at 176 (recognizing that the policy or custom advanced must fall within the scope of the policymaker's authority to establish municipal liability); *see Whitson v. Bd. of Cnty. Comms. of Cnty. of Sedgwick*, 106 F.4th 1063, 1068 (10th Cir. 2024).

Murphy identifies two allegedly retaliatory acts for which he maintains knowledge should be imputed to Allen.  First, Murphy highlights a write-up issued by Mark McClelland, the Assistant Director of Maintenance, on August 13, 2021, due to Murphy's purportedly poor work performance.  Second, Murphy points to his arrest and subsequent termination approximately six months later.  Neither incident, however, falls within the scope of Allen's delegated authority.  Allen's final policymaking authority, as delegated by the March 24, 2020, resolution, only encompassed management of the COVID-19 crisis.  There is no evidence in the summary

judgment record demonstrating that BISD's Board delegated to Allen final policymaking authority over the standards for issuing write-ups to employees or the policies for responding to potential threats against the school.

Additionally, and more importantly, both incidents that Murphy identifies took place after Allen's delegated authority expired.  The resolution provides that "the Superintendent's emergency authority as contemplated in this Resolution shall expire when the State of Emergency resulting from the COVID-19 pandemic is declared over or when Beaumont ISD resumes normal operations, whichever occurs first."  The period of modified operations ended in the Spring of 2020, as demonstrated by the fact that Murphy's claim for Premium Pay ends on May 28, 2020.  Accordingly, Allen's final policymaking authority lapsed before any of the alleged incidents of retaliation took place.  Therefore, Murphy's identification of Allen as the final policymaker is incorrect, and any constructive knowledge must be imputed to BISD's Board to sustain liability.

Furthermore, Murphy does not provide evidence of a pattern of unconstitutional conduct. When there is no official policy statement, a custom or policy may take the form of either a single unconstitutional act by a final policymaker or a pattern of unconstitutional conduct by a non-policymaker.  *Zarnow*, 614 F.3d at 169; *Saenz v. Dall. Cnty. Cmty. Coll. Dist.*, No. 3:10-CV-742-O, 2011 WL 1935742, at *6 (N.D. Tex. May 16, 2011).  Because there is no express policy underlying Murphy's First Amendment claims and Murphy does not identify any actions taken by a final policymaker, the only avenue available to establish the existence of a custom is by demonstrating a pattern of unconstitutional conduct.  As discussed below, however, Murphy fails to provide summary judgment evidence of a pervasive pattern of unconstitutional conduct, as required by § 1983.

16

c.   <u>Malicious Prosecution</u>

Exhibiting similar deficiencies, Murphy's response fails to identify an act by a policymaker or a pattern of unconstitutional conduct with respect to his Fourth Amendment claim for malicious prosecution.  In fact, Murphy's response does not address his Fourth Amendment claim at all. Murphy, however, perfunctorily pleads the requisite facts in his Third Amended Complaint and minimally discusses the claim in his sur-reply.  Specifically, Murphy contends that BISD has a custom of falsely accusing its employees of crimes in order to support their termination.

A plaintiff advancing liability on the grounds of a custom, as opposed to a policy, must demonstrate that "[a]ctual or constructive knowledge of [a] custom [is] attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority." *Piotrowski*, 237 F.3d at 579 (quoting *Webster*, 735 F.2d at 842); *see Cox*, 430 F.3d at 749 n.53; *Rivera*, 349 F.3d at 249.  Indeed, "[p]roof of a custom and knowledge of that custom are separate elements." *Garcia v. Contreras*, No. C-07-359, 2008 WL 4646897, at *9 n.8 (S.D. Tex. Oct. 20, 2008) (citing *Pineda v. City of Houston*, 291 F.3d 325, 330 (5th Cir. 2002)); *accord Cox*, 430 F.3d at 749; *Rivera*, 349 F.3d at 249; *Garcia v. County of El Paso*, 79 F. App'x 667, 669-70 (5th Cir. 2003).  "If actions of city employees are to be used to prove a custom for which the municipality is liable, those actions must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Webster*, 735 F.2d at 842; *accord Bennett*, 728 F.2d at 768.  "Actual knowledge may be shown by such means as discussions at council meetings or receipt of written information." *Bennett*, 728 F.2d at 768. "Constructive knowledge may be attributed to the governing body on the ground that it would

have known of the violations if it had properly exercised its responsibilities, as for example, where the violations were so persistent and widespread that they were the subject of prolonged public discussion or of a high degree of publicity." *Webster*, 735 F.2d at 842 (quoting *Bennett*, 728 F.2d at 768). Accordingly, for the same reasons discussed with respect to Murphy's First Amendment claim, any knowledge must be attributable to BISD's Board, as opposed to Allen.

In this instance, Murphy advances only one other incident as evidence of the alleged custom. In his Complaint, Murphy alleges that his arresting officer, Shanter Norman ("Norman"), was terminated consistent with BISD's unconstitutional practice of "falsely accus[ing] employees of crimes in order to support their termination." The only summary judgment evidence Murphy provides supporting this contention is Norman's unsworn declaration. Defendants, however, object to the consideration of Norman's declaration on the grounds that it is conclusory, speculative, and lacks foundation.

A party may object to materials offered as summary judgment evidence when the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. FED. R. CIV. P. 56(c)(2); *Klocke v. Watson*, No. 20-10103, 2021 WL 5871884, at *15 (5th Cir. Dec. 10, 2021); *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012). If the objections are sustained, the court disregards only those portions of the declaration that contain objectionable material while considering the content that remains. *Garza-Flores v. Mayorkas*, 38 F.4th 440, 445 (5th Cir. 2022) (citing *Akin v. Q-L Invs., Inc.*, 959 F.2d 521, 531 (5th Cir. 1992)). Objections should be considered by the court in evaluating whether the nonmovant has produced legally sufficient evidence for purposes of summary judgment. *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 368 (5th Cir. 2021) (noting that, to survive a motion for summary judgment,

18

the nonmovant must produce sufficient evidence to support a verdict in the nonmovant's favor); *see Favela v. Collier*, 91 F.4th 1210, 1213 (5th Cir. 2024); *Cardenas v. Fiesta Mart, LLC*, No.3-22-cv-2607-K-BN, 2024 WL 967849, at *1 (N.D. Tex. Mar. 5, 2024).  Moreover, an assertion in a declaration is conclusory if it relies on inferences without setting forth the facts that support those inferences.  *Favela*, 91 F.4th at 1213; *Washington v. Texas*, No. 3:23-cv-38, 2024 WL 1470903, at *4 (S.D. Tex. Mar. 11, 2024).

Norman's declaration provides:

5.      In hindsight given the facts recited to me at the scene of the arrest by Mr. Murphy, it is clear to me the district retaliated against Mr. Murphy in violation of his First Amendment Rights.  Since Mr. Murphy's arrest I have also been the victim of 1st Amendment Retaliation by the District.

6.      This conduct by the District, based on my years of experience with BISD, is a pattern and practice of retaliatory treatment of employees by the district that speak on matters of public concern.

At the outset, it is important to note that Norman's declaration does not support Murphy's contention in his Third Amended Complaint that there exists a pattern of malicious prosecution at BISD.  Rather, Norman's declaration focuses only on Murphy's First Amendment retaliation claims, of which the alleged malicious prosecution is but a mere sub-claim.  Additionally, even assuming that Norman's vague references to retaliation encompass BISD's alleged practice of malicious prosecution, Norman does not set forth facts supporting the conclusion that there is a pattern and practice of retaliatory treatment at BISD.  Norman does not identify any other factual scenarios in which BISD has retaliated against its employees, nor does he discuss the facts underlying the alleged retaliation he personally experienced.  Rather, he brazenly concludes, without factual support, that BISD has a pattern of engaging in unconstitutional retaliation.

Accordingly, paragraphs 5 and 6 of Norman's declaration are conclusory, and Defendants' objections are sustained.

Nevertheless, even if Murphy had successfully demonstrated that he and Norman were both subject to retaliation by BISD, Murphy would have still failed to show that such incidents "are 'sufficiently numerous' and have 'occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of [school district] employees.'" *Robinson v. Midland County*, 80 F.4th 704, 710 (5th Cir. 2023) (quoting *Martinez v. Nueces County*, 71 F.4th 385, 389 (5th Cir. 2023)), *cert. denied*, 144 S. Ct. 1010 (2024).  Indeed, the evidence of Murphy's isolated incident falls far short of demonstrating "the persistent, often repeated, constant violations that constitute custom and policy." *Jackson*, 852 F. App'x at 135-36 (concluding that six total incidents over a period of five years were "isolated violations" insufficient to support a *Monell* claim (quoting *Bennett*, 782 F.2d at 768 n.3)); *Henderson v. Killeen Indep. Sch. Dist.*, No. A-13-ca-471-LY, 2013 WL 6628630, at *3 (W.D. Tex. Dec. 16, 2013) ("Two isolated incidents clearly do not constitute a pattern of unconstitutional conduct sufficient to hold the school district liable under § 1983.").  Thus, Murphy has failed to establish the existence of a policy or custom that served as the moving force behind BISD's alleged First and Fourth Amendment violations. Consequently, BISD is entitled to summary judgment on Murphy's First and Fourth Amendment claims because there is insufficient evidence to create a fact issue regarding the existence of a pattern of unconstitutional conduct.

3.   <u>Constitutional Violations</u>

A governmental entity does not incur liability under § 1983 unless there exists "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *see James v. Harris County*, 577 F.3d 612, 617 (5th Cir. 2009); *Piotrowski*, 237 F.3d at 580.  The Supreme Court has explained:

> [I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality.  The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged.  That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Bd. of Cnty. Comm'rs of Bryan Cnty.*, 520 U.S. at 404; *see Johnson*, 379 F.3d at 310.  "Congress did not intend municipalities to be held liable unless *deliberate* action attributable to the municipality directly caused a deprivation of federal rights."  *Bd. of Cnty. Comm'rs of Bryan Cnty.*, 520 U.S. at 415; *Vess v. City of Dallas*, No. 3:21-CV-1764-D, 2022 WL 2277504, at *7 (N.D. Tex. June 23, 2022).  "*Monell* describes the high threshold of proof by stating that the policy must be the 'moving force' behind the violation."  *Piotrowski*, 237 F.3d at 580 (quoting *Monell*, 436 U.S. at 694); *see City of Canton*, 489 U.S. at 389; *Cox*, 430 F.3d at 748.

A prerequisite, however, to the third prong of the *Monell* analysis requires a determination that there exists a genuine dispute of material fact as to whether the plaintiff suffered a constitutional deprivation.  *Carr v. City of Spring Valley Vill.*, No. 19-20373, 2022 WL 1553539, at *5 (5th Cir. May 17, 2022) ("But it is self-evident that, in order for a municipal policy to be 'the moving force behind the claimed constitutional violations,' there must be a claimed constitutional violation."); *see Edwards v. City of Balch Springs*, 70 F.4th 302, 308 (5th Cir. 2023).  Because Murphy's First and Fourth Amendment claims have been disposed of on other

21

grounds, the court need only consider the alleged substantive and procedural due process violations.

The Due Process Clause of the Fourteenth Amendment provides: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. Procedural due process claims require a two-part analysis: (1) whether the plaintiff has a life, liberty, or property interest that is entitled to procedural due process protection; and (2) if so, what process is due. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982); *Bd. of Regents v. Roth*, 408 U.S. 564, 569-70 (1972); *Morris v. Livingston*, 739 F.3d 740, 749-50 (5th Cir. 2014); *Baldwin v. Daniels*, 250 F.3d 943, 946 (5th Cir. 2001); *Findeisen v. N. E. Indep. Sch. Dist.*, 749 F.2d 234, 237 (5th Cir. 1984) (pointing out that a court reviewing a procedural due process claim must determine if the plaintiff was "deprived of a protected property interest" and, if so, whether the deprivation was accomplished "without adherence to due process minimums").

Substantive due process, however, recognizes that there are certain rights so fundamental to our traditions of justice that, no matter what procedural guarantees the government affords, the government cannot abridge those rights. *Simi Inv. Co. v. Harris County*, 236 F.3d 240, 249 (5th Cir. 2000). Indeed, "[s]ubstantive due process 'bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them.'" *Marco Outdoor Adver., Inc. v. Reg'l Transit Auth.*, 489 F.3d 669, 673 n.3 (5th Cir. 2007) (quoting *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (quoting *Daniels*, 474 U.S. at 331)). Nevertheless, both substantive and procedural due process require the existence of a protected liberty or property

interest. *Wigginton v. Jones*, 964 F.3d 329, 339 (5th Cir. 2020) (noting that property interests may be established in the same manner for both substantive and procedural due process claims).

The Supreme Court of the United States has stated:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it. . . .  Property interests, of course are not created by the Constitution.  Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Roth*, 408 U.S. at 576; *accord Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005); *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 269-70 (5th Cir. 2012); *Ridgely v. Fed. Emergency Mgmt. Agency*, 512 F.3d 727, 735 (5th Cir. 2008).  Generally speaking, state law defines what constitutes a property interest, although property interests can arise based on "unwritten common law" or certain "policies and practices."  *Dennis Melancon, Inc.*, 703 F.3d at 269 (citing *Perry v. Sindermann*, 408 U.S. 593, 602-03 (1972)); *see Bishop v. Wood*, 426 U.S. 341, 344 (1976) (noting that a property interest in employment is decided by reference to state law).  Consequently, the realm of protected property interests extends well beyond actual ownership of real estate, chattels, or money.  *Smith as Tr. of Smith Fam. Living Tr. v. City of Bastrop*, No. 21-51039, 2023 WL 2890162, at *5 (5th Cir. Apr. 11, 2023).

A written policy may, but does not necessarily, create a constitutionally protected property interest.  *See Wigginton*, 964 F.3d at 336 (noting that an automatic or non-discretionary tenure policy may give rise to a protected property interest).  Specifically, the policy must give rise to a legitimate claim of entitlement.  *Yoon v. Garg*, No. 23-20519, 2024 WL 2861855, at *3 (5th Cir. June 6, 2024) (emphasizing that a plaintiff must demonstrate how a specific policy gives rise

to a legitimate claim of entitlement); *People's Workshop, Inc. v. Fed. Emergency Mgmt. Agency*, No. 17-107-JWD-RLB, 2018 WL 1532196, at *9 (M.D. La. Mar. 28, 2018).  A legitimate claim of entitlement arises when the government creates a rule or understanding that a person who satisfies certain conditions or predicates is entitled to a particular benefit.  *Shepard v. Cleveland Sch. Dist.*, 822 F. App'x 312, 313 (5th Cir. 2020) (explaining that a protected property interest arises where compliance with certain rules or understanding secure a particular benefit).  A policy, however, does not create a constitutionally protected entitlement if government officials may use their discretion in granting or denying a benefit under the policy.  *James v. Cleveland Sch. Dist.*, 45 F.4th 860, 866 n.3 (5th Cir. 2022) (citing *Baldwin*, 250 F.3d at 946); *Harrison v. Young*, 48 F.4th 331, 341 (5th Cir. 2022).

In the present case, Murphy contends that the Premium Pay Policy created a protected entitlement.  The policy provides that nonexempt employees who are required to work during an emergency closure for a disaster shall be entitled to Premium Pay.  The Premium Pay Policy contains three substantive predicates that must be satisfied before an employee has a legitimate claim of entitlement to Premium Pay.  Specifically, the employee must (1) be a nonexempt employee, and (2) required to work (3) during an emergency closure for a disaster.  Accordingly, Murphy must provide summary judgment evidence that the substantive predicates were satisfied, such that Murphy had a legitimate claim of entitlement to premium pay.

As mentioned above, however, state law determines the existence of a protected entitlement.  The Texas Education Code provides that a school board has the exclusive power and duty to govern and oversee the management of the public schools of the district.  TEX. EDUC. CODE § 11.151(b).  In interpreting that language, the Texas Supreme Court has held that, under

§ 11.151(b), "a school board must be the ultimate interpreter of its policy, subject to the limits established by the legislature in its provisions for administrative and judicial review." *Davis v. Morath*, 624 S.W.3d 215, 224 (Tex. 2021) (quoting *Montgomery Indep. Sch. Dist. v. Davis*, 34 S.W.3d 559, 565 (Tex. 2000)).

Here, the primary dispute centers on whether the requirement that BISD had an emergency closure was satisfied. Consequently, to survive summary judgment, Murphy must produce evidence that BISD's Board has interpreted the phrase "an emergency closure" to encompass the procedure implemented by BISD in response to COVID-19. Notably, Murphy does not cite any evidence in the summary judgment record regarding the Board's interpretation. Again, that alone offers sufficient grounds for rejecting the existence of a genuine dispute of material fact. *Wease*, 915 F.3d at 996-97.

Even considering the evidence available in the summary judgment record, none of it favors Murphy's position. First, the March 24, 2020, resolution repeatedly states "emergency closure *or* period of modified operations," which suggests that the two terms have distinct meanings. Second, the resolution also delegates to Allen the authority to determine work days and hours, if any, for all employees during the closure or period of modified operations. Pursuant to this provision, the Board effectively delegated to Allen the flexibility to determine whether it would be in the best interest of the school district to effectuate an emergency closure or enter a period of modified operations. Additionally, Allen, in her sworn declaration, states that BISD did not close as it had in the past for tropical storms or hurricanes. Rather, Allen highlights the marked difference between BISD's past emergency closures, where no operations took place for a period

25

of time, and BISD's modified operations during the pandemic, whereby employees had to work a minimum of five hours per day to receive full compensation.

In contrast, Murphy has not put forth or highlighted any summary judgment evidence rebutting BISD's contention that it entered a period of modified operations. As a result, Murphy cannot demonstrate that all three predicates contained in the Premium Pay Policy were satisfied. Because he failed to provide any evidence that he satisfied the predicates, Murphy cannot establish a protected property interest as required by the Fourteenth Amendment. Therefore, BISD is entitled to summary judgment on Murphy's due process claims.

### D.   Superintendent Allen

Murphy sued Allen in her individual capacity, asserting the same four claims he asserted against BISD. To establish liability against an official in her personal capacity under § 1983, the plaintiff must show that the official, acting under color of state law, caused the deprivation of a federal right. *Hitt v. McLane*, 854 F. App'x 591, 594 (5th Cir. 2021) (quoting *Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009)). An official sued in her personal capacity, however, can assert personal immunity defenses such as qualified immunity. *Goodman*, 571 F.3d at 395.

Qualified immunity is an immunity from suit that extends to all aspects of civil litigation. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Cleveland v. Bell*, 938 F.3d 672, 676 (5th Cir. 2019); *Brothers v. Zoss*, 837 F.3d 513, 518 (5th Cir. 2016); *Hinojosa v. Livingston,* 807 F.3d 657, 663 (5th Cir. 2015); *see Cole v. Carson*, 935 F.3d 444, 446 (5th Cir. 2019) ("The doctrine protects at the earliest stage of litigation at which the defense's application is determinable."). "[Q]ualified immunity means immunity from having to stand trial, not simply immunity from

26

monetary liability." *Westfall v. Luna*, 903 F.3d 534, 542 (5th Cir. 2018) (quoting *Brown v. Glossip*, 878 F.2d 871, 874 (5th Cir. 1989)); *see White v. Pauly*, 580 U.S. 73, 79 (2017) (quoting *Pearson*, 555 U.S. at 231); *Saucier v. Katz*, 533 U.S. 194, 200 (2001). "[I]t protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011); *accord White*, 580 U.S. at 79; *Mullenix v. Luna*, 577 U.S. 7, 12 (2015); *Cunningham v. Castloo*, 983 F.3d 185, 190 (5th Cir. 2020); *Joseph v. Bartlett*, 981 F.3d 319, 337 (5th Cir. 2020); *Cleveland*, 938 F.3d at 675.

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix*, 577 U.S. at 11 (quoting *Pearson*, 555 U.S. at 231); *accord White*, 580 U.S. at 79; *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Mendez v. Poitevant*, 823 F.3d 326, 331 (5th Cir. 2016); *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016). "[O]nce properly raised by the defendant, the plaintiff has the burden to negate the assertion of qualified immunity." *King v. Handorf*, 821 F.3d 650, 653 (5th Cir. 2016); *see Joseph*, 981 F.3d at 328; *Cleveland*, 938 F.3d at 675.

For summary judgment purposes, "a defendant asserting immunity is not required to establish the defense beyond peradventure, as he would have to do for other affirmative defenses." *Cousin v. Small*, 325 F.3d 627, 632 (5th Cir. 2003) (quoting *Beck v. Tex. State Bd. of Dental Exam'rs*, 204 F.3d 629, 633 (5th Cir. 2000)); *see Joseph*, 981 F.3d at 329-30. "It is sufficient that the movant in good faith pleads that [she] is entitled to absolute or qualified immunity." *Cousin*, 325 F.3d at 632; *accord Hathaway v. Bazany*, 507 F.3d 312, 320 (5th Cir. 2007). As

27

the Fifth Circuit has explained, "[w]e do not require that an official demonstrate that he did not violate clearly established federal rights; *our precedent places that burden upon plaintiffs*." *Zarnow*, 500 F.3d at 407 (emphasis added) (quoting *Pierce v. Smith*, 117 F.3d 866, 871-72 (5th Cir. 1997)); *see Joseph*, 981 F.3d at 329-30.

Therefore, a plaintiff seeking to overcome qualified immunity must show:  "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."  *Wood v. Moss*, 572 U.S. 744, 758 (2014) (quoting *Ashcroft*, 563 U.S. at 735); *accord Cunningham*, 983 F.3d at 191; *Est. of Bonilla v. Orange County*, 982 F.3d 298, 306 (5th Cir. 2020); *see District of Columbia v. Wesby*, 583 U.S. 48, 62-63 (2018); *Cleveland*, 938 F.3d at 675-76; *Kovacic v. Villarreal*, 628 F.3d 209, 211-12 (5th Cir. 2010) ("[C]ourts will not deny immunity unless 'existing precedent . . . placed the statutory or constitutional question beyond debate.'" (quoting *Ashcroft*, 563 U.S. at 741)).  If the plaintiff fails at either step, the federal court can grant qualified immunity by addressing either step or both of them."  *Cleveland*, 938 F.3d at 676; *see Pearson*, 555 U.S. at 232; *Est. of Bonilla*, 982 F.3d at 306; *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019).

Hence, to prevail, Murphy must show that Allen knew or reasonably should have known that the actions she took within the sphere of her official responsibility would violate Murphy's constitutional rights.  *See Harlow*, 457 U.S. at 818; *Est. of Bonilla*, 982 F.3d at 306; *Cleveland*, 938 F.3d at 677.  Because the analysis regarding the existence of a protected property interest remains the same, Murphy's due process claims against Allen must also fail as there is no evidence of a constitutional violation.  Thus, the court need only consider whether summary judgment is appropriate as to Murphy's First and Fourth Amendment claims.

On his First and Fourth Amendment claims, Murphy has unequivocally failed to meet his burden.  Despite broadly stating that Allen violated his First and Fourth Amendment rights in his statement of issues, Murphy does not identify any actions taken by Allen in violation of those rights in either his response or his sur-reply.  Rather, to the extent Murphy addresses his First and Fourth Amendment claims, his efforts are focused solely on establishing liability against BISD.  Because Murphy failed to identify any action, or connect Allen in any manner, to his First and Fourth Amendment claims, the court cannot say that Allen knew or reasonably should have known that the action she was taking would violate Murphy's constitutional rights.  Therefore, Allen is entitled to summary judgment on all of the claims asserted against her in Murphy's Third Amended Complaint.

III.    Conclusion

For the foregoing reasons, Murphy has failed to raise a genuine dispute of material fact on any of the claims contained in his Third Amended Complaint.  Consequently, Defendants are entitled to summary judgment.  Therefore, Defendants' Motion for Summary Judgment (#61) is GRANTED.  The court will issue a separate Order of Dismissal.

SIGNED at Beaumont, Texas, this 25th day of September, 2024.

_Marcia A. Crone_

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE