**UNITED STATES DISTRICT COURT**        **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| GREG MURPHY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| *versus* | § | CIVIL ACTION NO. 1:22-CV-135 |
| | § | |
| BEAUMONT INDEPENDENT SCHOOL | § | |
| DISTRICT and SHANNON ALLEN, | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM AND ORDER

Pending before the court is Plaintiff Greg Murphy's ("Murphy") Motion for New Trial (#83) wherein Murphy asks this court to grant a new trial on all of the claims contained in Murphy's Third Amended Complaint (#55). Defendants Beaumont Independent School District ("BISD") and Shannon Allen ("Allen") (collectively, "Defendants") filed a response (#85). Having considered the pending motion, the submissions of the parties, the pleadings, the record, and the applicable law, the court is of the opinion that Murphy's motion for new trial should be denied.

I.    <u>Background</u>

This lawsuit arises from a three-year employment relationship between BISD and Murphy. BISD hired Murphy on January 7, 2019, as a carpenter in BISD's Maintenance Department. The employment relationship developed without incident until the inception of the coronavirus ("COVID-19") pandemic.

On March 24, 2020, Defendants responded to the escalating health risk by closing BISD's doors to the public. BISD, however, asked its employees to continue working to provide remote

educational services and meals to its students. Murphy continued to report to work as requested. He maintains, however, that he expected to be paid an increased hourly rate pursuant to the Premium Pay During Disasters Policy ("Premium Pay Policy") section of BISD's Board Policy DEA (Local). The Premium Pay Policy increases an employee's hourly rate one and one-half times for hours worked during an emergency closure ("Premium Pay"). The same day BISD closed its doors to the public, BISD's Board of Trustees ("the Board") passed a resolution that delegated a substantial amount of decision-making authority to Allen, the Superintendent of BISD. Among the delegated authorities, the Board authorized Allen to make decisions regarding employee compensation for work performed during an emergency closure or period of modified operations. Allen, acting with the Board's authorization, decided that only those employees whose position required prolonged exposure to the public would receive Premium Pay. Murphy, whose position did not involve prolonged exposure to the public, did not qualify.

On June 30, 2020, Larry Josh ("Josh") filed an internal grievance on behalf of the Beaumont Teachers Association ("the BTA") seeking retroactive "enhanced COVID-19 pay." After Josh filed the grievance, other employees, including Murphy, began filing internal grievances seeking the same relief. Murphy filed his internal grievance on July 8, 2020, alleging that he was entitled to retroactive Premium Pay for the hours he worked between March 23, 2020, and May 28, 2020. After various internal proceedings, Allen executed a Resolution and Release Agreement on December 2, 2020, which offered to settle the claims of the BTA and any other employees who filed a grievance in exchange for $819.06 each. Murphy rejected the settlement and refused to deposit the check he received from BISD.

After rejecting Defendants' settlement offer, Murphy began circulating a petition and collecting signatures of similarly situated coworkers in an effort to initiate a legal action against Defendants.  Once Murphy gathered what he believed to be sufficient support, he began consulting with a local lawyer during the late Spring and early Summer of 2021.  Murphy maintains that BISD learned of his consultation with legal counsel and started a campaign of retaliation against him.  On August 13, 2021, BISD's Assistant Director of Maintenance issued Murphy a "Misconduct Notice" based on Murphy's purportedly "poor work performance."  On February 9, 2022, BISD police arrested Murphy based on reports that Murphy had threatened to bomb BISD's Maintenance Department.  BISD instituted an independent investigation into Murphy's conduct and ultimately terminated Murphy's employment on March 12, 2022.  BISD claims to have terminated Murphy's employment for two reasons.  First, after reviewing the evidence, BISD concluded that Murphy made a terroristic threat against BISD.  Second, Murphy refused to cooperate during BISD's investigation, in contravention of BISD policy.  Murphy, however, asserts that both his arrest and termination were the result of BISD's retaliatory agenda.

On March 31, 2022, Murphy filed his Original Complaint (#1) in the Eastern District of Texas, Beaumont Division, alleging that Defendants violated his substantive and procedural due process rights.  Murphy amended his Complaint three times (#s 9, 32, 55), adding additional claims of unlawful retaliation under the First Amendment and malicious prosecution under the Fourth Amendment.  Defendants filed a Joint Answer (#57), denying the allegations set forth in Murphy's Complaint.  Additionally, Allen pleaded the affirmative defense of qualified immunity.  On April 1, 2024, Defendants filed a Motion for Summary Judgment (#61) on all the claims

asserted in Murphy's Third Amended Complaint.  Allen also moved independently for summary judgment on the basis of qualified immunity.

On September 25, 2024, this court granted Defendants' Motion for Summary Judgment, concluding that Murphy failed to establish a genuine dispute of material fact on one or more of the essential elements required for his First, Fourth, and Fourteenth Amendment claims.  The court further concluded that Allen, who was sued in her individual capacity, was entitled to qualified immunity.  On October 23, 2024, Murphy filed a motion for new trial, asking this court to reconsider its summary judgment ruling.

II.    Analysis

A.    Rule 59(e) Standard

While the Federal Rules of Civil Procedure do not explicitly provide for a motion for reconsideration, such a request may be considered through a Rule 59(e) motion to alter or amend judgment.  *Caldwell v. Parker Univ.*, 802 F. App'x 841, 842 (5th Cir. 2020); *Gates v. Strain*, 885 F.3d 874, 884 (5th Cir. 2018); *United States v. Redd*, 652 F. App'x 300, 303 (5th Cir. 2016). In the present case, Murphy erroneously requested relief via a motion for new trial under Rule 59(a)(1).  Because there was no trial in this case, the court cannot logically grant a motion for new trial.  *See Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744, 748 n.9 (5th Cir. 2006); *Alusi v. City of Frisco*, No. 4:22-CV-397-SJD, 2024 WL 3955464, at *2 (E.D. Tex. Aug. 27, 2024). Accordingly, the court will construe the motion as a Rule 59(e) motion to alter or amend the summary judgment granted in favor of Defendants.  *See Piazza's Seafood World, LLC*, 448 F.3d at 748 n.9 (holding that "[t]he district court correctly characterized and analyzed [the defendant's] Rule 59(a) motion for new trial as a Rule 59(e) motion to reconsider entry of summary

judgment"); *Bass v. U.S. Dep't of Agric.*, 211 F.3d 959, 962 (5th Cir. 2000) (construing a motion

for reconsideration after judgment was entered as a Rule 59(e) motion).

A Rule 59(e) motion questions the correctness of a court's prior judgment. *Willbern v.*

*Bayview Loan Servicing, L.L.C.*, 842 F. App'x 865, 869 (5th Cir. 2021) (citing *In re Transtexas*

*Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002)); *Edionwe v. Bailey*, 860 F.3d 287, 294 (5th Cir.

2017).  Consequently, Rule 59(e) may not be used simply for "rehashing evidence, legal theories,

or arguments that could have been offered or raised before the entry of judgment" or to relitigate

matters that were not resolved to the movant's satisfaction. *Mendoza v. Fed. Deposit Ins. Corp.*,

841 F. App'x 660, 663 (5th Cir. 2021) (quoting *Templet v. HydroChem Inc.*, 367 F.3d 473, 479

(2004)); *In re Deepwater Horizon*, 785 F.3d 986, 992 (5th Cir. 2015) (holding that an unexcused

failure to present evidence available at the time of summary judgment provides a valid basis for

denying a subsequent motion for reconsideration); *see Edionwe*, 860 F.3d at 295; *Banister v.*

*Davis*, 590 U.S. 504, 508 (2020).  Indeed, "motions for reconsideration are not to be viewed as

a readily available 'back up' plan for curing briefing deficiencies." *Atkinson Candy Co. v. Laco,*

*Inc.*, No. 9:17-CV-33, 2017 WL 11610346, at *1 (E.D. Tex. July 22, 2017) (quoting *Brauninger*

*v. Default Mgmt. Sols., L.L.C.*, No. 05-0688, 2007 WL 128809, at *6 n.6 (E.D. La. 2007), *aff'd*,

260 F. App'x 634 (5th Cir. 2007)).  Hence, motions for reconsideration should not be used

"simply to correct a prior motion's inadequacies." *Wolf Designs, Inc. v. Donald McEvoy Ltd.,*

*Inc.*, No. Civ.A.3:03-CV-2837, Civ.A.3:04-CV-0348-G, 2005 WL 827076, at *3 (N.D. Tex.

Apr. 6, 2005); *see Hernandez v. Results Staffing, Inc.*, No. 4:14-CV-182-A, 2019 WL 1275448,

at *6 n.4 (N.D. Tex. Mar. 20, 2019).  Moreover, mere disagreement with a district court's order

does not warrant reconsideration of the order. *Chapman v. LHC Grp., Inc.*, 126 F. Supp. 3d 711,

719 (E.D. La. 2015); *St. Paul Mercury Ins. Co. v. Lewis-Quinn Constr.*, No. H-10-5146, 2012 WL 5381701, at *1 (S.D. Tex. Oct. 31, 2012).

A district court has "considerable discretion to grant or deny a motion under Rule 59(e)." *Schoenbauer v. Deutsche Bank Nat'l Tr. Co.*, No. 22-10726, 2023 WL 3452074, at *2 (5th Cir. 2023); *accord Estate of Brown v. Cypress Fairbanks Indep. Sch. Dist.*, 863 F. Supp. 2d 632, 634 (S.D. Tex. 2012); *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993). A court's discretion, however, "is not without limit." *Edward H. Bohlin Co.*, 6 F.3d at 355. Indeed, a motion for reconsideration under Rule 59(e) is "an extraordinary remedy and should be granted sparingly." *Schoenbauer*, 2023 WL 3452074, at *2; *Estate of Brown*, 863 F. Supp. 2d at 634; *accord Edionwe*, 860 F.3d at 295; *City of New Orleans Emps. Ret. Sys. v. Hayward*, 508 F. App'x 293, 301 (5th Cir. 2013); *Templet*, 367 F.3d at 479. When considering a motion to alter or amend judgment, "[t]he court must strike the proper balance between two competing imperatives:  1) finality and 2) the need to render just decisions on the basis of all the facts." *Edward H. Bohlin Co., Inc.*, 6 F.3d at 355; *accord Hayward*, 508 F. App'x at 301; *Templet*, 367 F.3d at 479. Accordingly, the Rule 59(e) standard "favor[s] the denial of motions to alter or amend a judgment." *La. Newpack Shrimp Co., Inc. v. Indigo Seafood Partners, Inc.*, No. 22-30653, 2023 WL 5316473, at *2 (5th Cir. 2023) (quoting *S. Constructors Grp., Inc. v. Dynalectric Co.*, 2 F.3d 606, 611 (5th Cir. 1993)); *accord Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 549 n.26 (5th Cir. 2003).

B.     Murphy's Due Process Claims

Murphy's first assertion of error arises from the entry of summary judgment on his substantive and procedural due process claims.  Murphy contends that the court committed

manifest error when it concluded that Murphy did not raise a genuine dispute of material fact regarding whether he held a protected property interest in receiving Premium Pay. BISD's Premium Pay Policy contains three substantive predicates that must be satisfied before a protected entitlement is created under the policy. In the present case, the issue of whether one of the three predicates was satisfied turns on BISD's interpretation of the term "emergency closure." Specifically, to prove that he held a protected entitlement under the Premium Pay Policy, Murphy must demonstrate that BISD interpreted the phrase "emergency closure" to encompass BISD's response to COVID-19.

The court previously held that Murphy failed to meet his burden at the summary judgment stage. Murphy, however, asserts that he put forth sufficient evidence to raise a genuine dispute of material fact regarding whether BISD's response constituted an emergency closure. To support his contention, Murphy advances multiple arguments. First, Murphy maintains that the court incorrectly determined that he failed to provide any evidence of the Board's interpretation of the phrase "emergency closure," as it was used in BISD's Premium Pay Policy. Second, Murphy contends that the court improperly discounted Allen's March 24, 2020, statements regarding employee compensation. Third, Murphy avers that the court failed to consider evidence that BISD received and retained federal disaster funding.

### 1.    Emergency Closure Communications

Murphy states that he submitted evidence that BISD's Board and Allen repeatedly referred to BISD's response to COVID-19 as an "emergency closure" in official communications. Murphy's assertions overstate the evidence while simultaneously oversimplifying the court's prior analysis. Murphy first directs the court's attention to Pages 7 and 8 of his Response to

Defendants' Motion for Summary Judgment ("Response").  The cited pages contain an unorganized list of dates, events, and documents cited via what appears to be Bates Numbers. Unfortunately, the court was unable to locate or identify many of the documents cited with Bates Numbers.  Though under differing circumstances a Bates Number may be a perfectly appropriate method of citation, here, Murphy has committed a series of errors rendering the mechanism unworkable.  First, not all of the documents in the summary judgment record were marked with their corresponding Bates Number.  Second, Murphy failed to identify an exhibit, or even a document number indicating to which filing the evidence is purportedly attached.  Consequently, due to the voluminous nature of the summary judgment record, Murphy's flawed citations render much of the evidence irretrievable or unverifiable.

As the court emphasized multiple times in its previous order, it is not the function of the court to scour the summary judgment record in search of evidence to defeat a motion for summary judgment.  *Wease v. Ocwen Loan Servicing, L.L.C.*, 915 F.3d 987, 996-97 (5th Cir. 2019); *United Healthcare Servs. v. Rossel*, No. 3:21-CV-1547-l-BT, 2024 WL 4326539, at *3 (N.D. Tex. Sep. 27, 2024); *Carroll v. Fort James Corp.*, No. 1:04-cv-3-HSO-JCG, 2021 WL 141696, at *5 (S.D. Miss. Jan. 14, 2021).  Rather, the nonmoving party must identify the evidence upon which he relies with *reasonable particularity*.  *Wease*, 915 F.3d at 996-97; *United Healthcare Servs.*, 2024 WL 4326539, at *3.  By failing to provide the exhibit number, or even the document number to which the exhibit was attached, Murphy has left the court to wander aimlessly through numerous filings on the mere hope of locating the obscure Bates Numbers.  In light of Murphy's choice to employ an unworkable citation mechanism, the court reaffirms its prior conclusion that

Murphy has unequivocally failed to identify the evidence relied upon with *reasonable particularity*.

Moreover, even if the court were to consider the documents to which it believes Murphy is referring, the purported evidence remains elusive.[1]  In his Response, Murphy cites Exhibit B for a proposition similar to his present contention that BISD and Allen referred to the COVID-19 response as an emergency closure.  In particular, Murphy's Response states that, "Plaintiff has attached multiple official school emails referencing official BISD declarations of school closings." Surprisingly, a review of Exhibit B revealed that the word "closure" was used only once, and it was unaccompanied by the word "emergency."  Rather, the communications in Exhibit B repeatedly refer to a suspension of "normal operations" or a suspension of "on campus learning." Meanwhile, the communications simultaneously discuss the "Flexible Education Program," pursuant to which BISD intended to facilitate and provide remote educational services. Accordingly, the evidence fails to support Murphy's contention that BISD effectuated an emergency closure.

In the present motion, Murphy offers one example of the allegedly numerous official communications in which BISD referred to its response to COVID-19 as an emergency closure. Murphy's motion states that, "[f]or example, the March 24, 2020 Board resolution repeatedly used the phrase 'emergency closure or period of modified operations,' indicating the board viewed the pandemic response as falling within the policy's scope."  Murphy's example indicates to the court that either Murphy did not read the court's prior order, or he did not think the court's analysis was

_____

[1] Exhibit B was cited on Page 21 of Murphy's Response.  The citation was not located on Pages 7 and 8, as indicated in the pending motion.

sufficiently important to address. Murphy does not provide any evidence to contravene, nor does he even mention, the court's conclusion that BISD, as the ultimate interpreter of its policy under Texas law, intended to provide Allen with the flexibility to decide whether to effectuate an emergency closure *OR* enter a period of modified operations in response to the pandemic. Murphy also fails to counter the significant evidentiary support offered by BISD demonstrating that it entered a period of modified operations. Accordingly, the communications cited do not support the conclusion that the court committed error by holding that Murphy failed to raise a genuine dispute of material fact regarding whether he held a protected entitlement under BISD's Premium Pay Policy.

2.     Allen's Statements to BISD's Board

Murphy also contends that the court improperly discounted Allen's March 24, 2020, statements to BISD's Board that employee compensation would remain the same during the pandemic. In support of his contention, Murphy cites Page 8 of his Response, which provides, in relevant part:

> March 24, 2020 - Board Exhibit Cover Sheet BISD 0173 and Board meeting is related to employee compensation after the President and the Governor of Texas declared a state of disaster due to Covid-19. Allen reassures the Board there will be no changes to compensation if people work. [BISD 0175 - Superintendent is given authority to make decisions regarding payment of employees during an emergency closure].

After a diligent search of the record, the court was able to locate the two pieces of evidence cited in the quoted section. Nevertheless, the evidence fails to support the propositions for which they are cited.

First, Murphy cites "Board Exhibit Cover Sheet BISD 0173." Bates Number "BISD 0173" does not appear on the cited document. The court, however, was able to locate a document titled

"Board Exhibit Cover Sheet" in Defense Exhibit 5-B 010, which was attached to Defendant's Motion for Summary Judgment. Murphy correctly indicates that the cover sheet states that, under the resolution, Allen would have the authority to make determinations about employee compensation. The cover sheet does not, however, offer any assurances regarding the continuity of employee compensation during the pandemic. Second, Murphy cites "BISD 0175." Though the court was unable to locate or identify a document labeled "BISD 0175," the description indicates that Murphy is referring to BISD's Resolution, whereby BISD gave Allen the authority to make decisions regarding employee compensation. Notably absent from BISD's resolution is any assurance that compensation would remain the same during the pandemic. If the evidence existed as represented, then perhaps Murphy could have raised a genuine dispute of material fact. That, however, is not the situation in which the court finds itself.

Furthermore, to the extent that Murphy's motion for new trial refers to evidence different from the evidence identified above, the court still must conclude that there exists no genuine dispute of material fact. Murphy's ineffective citations have impeded the court's ability to locate the relevant evidence. Consequently, Murphy has failed to identify the supporting evidence to which he refers with the reasonable particularity required. *Wease*, 915 F.3d at 996-97; *United Healthcare Servs.*, 2024 WL 4326539, at *3.

Murphy alternatively cites Pages 5 and 6 of his Third Amended Complaint in support of the proposition that Allen reassured BISD's Board that employee compensation would remain the same. Pleadings, however, are not evidence. *Gallagher v. Vokey*, 860 F. App'x 354, 358 (5th Cir. 2021) ("[P]leadings are not summary judgment evidence."); *see Clark v. City of Alexandria*, 116 F.4th 472, 480 (5th Cir. 2024). Accordingly, the court's conclusion remains unchanged.

3.    <u>Federal Disaster Funding</u>

Murphy advances one final contention in support of his due process claims.  Murphy maintains that the court failed to consider evidence that BISD received and retained federal disaster funding intended to cover premium pay for essential workers during the COVID-19 pandemic. To support his contention, Murphy cites Page 15 of his Response as well as Paragraph 5 of his Third Amended Complaint.

Page 15 of Murphy's Response contains portions of both the Summary of the Argument and the Argument and Analysis.   Murphy does not cite a single exhibit on Page 15, nor does he mention BISD's receipt of federal funding.  Additionally, upon a thorough review of his Response in its entirety, there is not a singular instance in which Murphy addresses the issue of  federal funding.  As a result, Plaintiff's counsel veers dangerously close to violating Rule 11 of the Federal Rules of Civil Procedure.  FED. R. CIV. P. 11(b).  Nevertheless, if the court "failed to consider" BISD's receipt of federal disaster funds, that merely reflects counsel's failure to raise the issue.

Murphy also cites his Third Amended Complaint for additional support.  Notably, Murphy does not cite any of the exhibits attached to the complaint.  Rather, he cites Paragraph 5 of his complaint.  Murphy appears, however, to have improperly cited his own filings, as Paragraph 5 does not contain any reference to federal funds.  In Paragraph 6, Murphy alleges that  BISD implemented the Premium Pay Policy for purposes of obtaining federal disaster funds.  As stated above, pleadings do not constitute evidence.  *Gallagher*, 860 F. App'x at 358; *see Clark*, 116 F.4th at 480.  Additionally, this issue was not raised, nor was it even discussed by Murphy in the Response to Defendants' Motion for Summary Judgment.  The court is not required to consider

arguments that were available but not raised at the summary judgment stage. *Hernandez*, 2019 WL 1275448, at *6 n.4. Therefore, the court concludes that summary judgment was proper with respect to Murphy's due process claims.

      B.      <u>Murphy's First Amendment Claims</u>

Murphy also asks this court to reconsider its entry of summary judgment on his First Amendment retaliation claim. Murphy advances two arguments in support of his First Amendment claim. Primarily, Murphy asserts that the court failed to recognize that Allen constituted a final policymaker for purposes of Murphy's First Amendment claim. Alternatively, Murphy asserts that, even if Allen does not constitute a final policymaker, Murphy provided evidence of a widespread custom of unconstitutional retaliation.

Murphy completely ignores the court's assessment that he failed to plead or argue any of the elements of governmental liability with respect to his First Amendment claim. Rather, Murphy provides a generic citation to Pages 21 and 22 of his Response. On Pages 21 and 22, Murphy discusses the requirements of municipal liability generally. Murphy never explains nor demonstrates how the elements of municipal liability are satisfied with respect to Murphy's First Amendment claim. Consequently, the court properly concluded that Murphy failed to raise a genuine dispute of material fact on his First Amendment claim.

Despite the underlying flaw in Murphy's position, Murphy's assertion that Allen constituted a final policymaker similarly ignores the court's prior analysis. In the present motion, Murphy states that Allen was a final policymaker for purposes of his First Amendment claim because "[t]he March 24, 2020 Board resolution broadly empowered Allen to make employment decisions during the pandemic." Murphy does not endeavor to explain the express provision

contained in the resolution that terminated Allen's authority upon resuming normal operations. Therefore, Murphy has failed to identify a manifest error of law or fact in the court's conclusion that Allen did not constitute a final policymaker for purposes of his First Amendment claim.

Murphy's second contention also falls flat. As Murphy recognizes on Page 4 of the present motion, two incidents of First Amendment retaliation alone do not demonstrate the type of pattern required to establish governmental liability. Murphy, however, attempts to bolster his position by advancing an argument that was not contained in his Response. Murphy asserts that he "alleged the existence of other similar incidents and settlements paid by BISD." It is first important to note that allegations unsupported by evidence at the summary judgment stage are insufficient to forestall the entry of judgment. *Gallagher*, 860 F. App'x at 358; *see Clark*, 116 F.4th at 480. Murphy fails to cite any evidence or exhibits to support his broad proposition. Nevertheless, the court may contextually deduce that the settlements to which Murphy refers are those paid by BISD in response to employee grievances regarding the denial of Premium Pay. Interestingly, the settlements to which Murphy refers had nothing to do with First Amendment retaliation. Rather, the settlement agreements resolved various employee grievances requesting retroactive Premium Pay. Therefore, the settlements do not support a finding that BISD had a custom of unconstitutionally retaliating against its employees.

Additionally, even if the court could consider the settlements as evidence of a larger pattern of unconstitutional conduct, Murphy did not raise this issue in his Response to Defendants' Motion for Summary Judgment. Despite being well aware of the existence of these settlement agreements, Murphy's Response does not once mention there being a custom of constitutional violations with respect to his First Amendment retaliation claim. The only custom Murphy mentions throughout

the entirety of his Response is the repetitive and blanket statement that BISD adopted a "policy, practice, or custom," which deviated from BISD's existing policy regarding Premium Pay. As explained above, Murphy failed to provide any evidence that Allen's decision to limit Premium Pay to those employees who served in public facing roles violated a constitutional right. Therefore, Murphy has failed to raise a genuine dispute of material fact on his First Amendment Retaliation claim.

C.    Murphy's Fourth Amendment Claim

Murphy further contends that this court erred in granting summary judgment on his Fourth Amendment claim. Murphy asserts that the court failed to recognize Allen as a final policymaker with respect to BISD law enforcement matters. Murphy contends that as superintendent, "Allen supervised the BISD police chief and had final authority over law enforcement policies. (Plaintiff's Response, DKT. 67, p. 26; Third Amended Complaint, Dkt. 55, ¶¶ 57-58) . . . ." Allen's name, however, does not appear anywhere on Page 26 of Murphy's Response. In fact, the only time that Allen's name appears anywhere in connection with Murphy's Fourth Amendment claim is in the statement of the issues where he generally states that Allen is not entitled to qualified immunity. This omission, however, may be symptomatic of the larger issue that Murphy completely omitted his Fourth Amendment claim from the Argument and Analysis section of his Response.

Paragraphs 57 and 58 of Murphy's Third Amended Complaint, however, do allege that Allen constitutes a final policymaker on issues of law enforcement. As the court noted previously, pleadings do not constitute summary judgment evidence. *Gallagher*, 860 F. App'x at 358; *see Clark*, 116 F.4th at 480. Additionally, there does not exist a proper citation to any evidence demonstrating that Allen had final policymaking authority over BISD's law enforcement decisions

in Murphy's Third Amended Complaint, Response to Defendant's Motion for Summary Judgment, Sur-Reply, or in the present motion. Consequently, Murphy has not overcome the presumption that a school board, rather than its superintendent, is the final policymaker for a school district. Moreover, Murphy has not offered any evidence demonstrating that the school board delegated to Allen final policymaking authority over matters of law enforcement. *See Longoria ex rel. M.L. v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 271 (5th Cir. 2019). Lastly, to the extent that such evidence exists, Murphy has unequivocally failed to highlight such evidence or make it accessible for the court's review. *See Wease*, 915 F.3d at 996-97; *United Healthcare Servs.*, 2024 WL 4326539, at *3.

Murphy also asserts that BISD has a pattern of falsely accusing employees of crimes to justify their termination. As the court noted in its Order on Defendants' Motion for Summary Judgment, Murphy has provided only one other instance of this alleged pattern. Objections to the evidence of the one instance were sustained, effectively rendering the sole evidence of this alleged custom inadmissible. Moreover, as the court further addressed, even if such evidence had been admissible, two instances of conduct fall well short of a custom or pattern required to establish governmental liability. Because Murphy has not directed the court to any contravening authority, Murphy's request that the court reconsider the entry of summary judgment on his Fourth Amendment claim is denied.

D.     Allen's Qualified Immunity

Finally, Murphy maintains that this court erred in concluding that Allen was entitled to qualified immunity. Murphy does not offer any new evidence or arguments. Rather, he simply rehashes many of the same arguments made for purposes of establishing liability against BISD,

as well as the arguments he made previously in his Response.  Therefore, it is not necessary for the court to reevaluate its conclusions regarding qualified immunity.

III.    Conclusion

After considering all of the evidence and the arguments presented, the court concludes that Murphy's motion fails to meet the standard for relief under Rule 59(e).  Murphy merely reasserts the legal arguments contained in his initial response to Defendants' Motion for Summary Judgment, which were already considered and rejected by the court.  Further, Murphy has not presented evidence of a manifest error by the court or any newly discovered evidence that was previously unavailable.

"The manifest injustice standard presents . . . a high hurdle" for the movant.  *Westerfield v. United States*, 366 F. App'x 614, 619 (6th Cir. 2010); *see Lamb v. Ashford Place Apartments L.L.C.*, 914 F.3d 940, 943 (5th Cir. 2019) ("A motion to alter or amend judgment must clearly establish either a manifest error of law or fact or must present newly discovered evidence." (quoting *Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005)); *Simon v. United States*, 891 F.2d 1154, 1159 (1990) (recognizing that the movant bears the burden of "clearly establishing" a manifest error in the context of a Rule 59(e) motion); *accord Bender Square Partners v. Factory Mut. Ins. Co.*, No. 4:10-CV-4295, 2012 WL 1952265, at *4 (S.D. Tex. May 30, 2012).  The United States Court of Appeals for the Fifth Circuit has defined "manifest error" as one that is "plain and indisputable, and that amounts to a complete disregard of the controlling law."  *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004); *accord Puga v. RCX Sols., Inc.*, 922 F.3d 285, 293 (5th Cir. 2019); *Huss v. Gayden*, 585 F.3d 823, 829 (5th Cir. 2009).  While Murphy argues that the court failed to consider the summary judgment evidence, at bottom, his

argument is based on his disagreement with the court's ruling rather than any specific instances of error by the court.

For the foregoing reasons, Murphy has failed to demonstrate a manifest error of law or fact contained in the court's order granting Defendants' Motion for Summary Judgment. Therefore, Murphy is not entitled to relief under Rule 59(e). Consequently, Murphy's Motion for New Trial (#83) is DENIED.

SIGNED at Beaumont, Texas, this 25th day of November, 2024.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE